IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID P. AND VICKIE L. OVERMAN,<br><br>Debtor. | Chapter 7<br><br>Case No. 08-bk-16830-SSC<br><br>(Not for Publication- Electronic Docketing ONLY)<br><br>MEMORANDUM DECISION SETTING ASIDE THE LIEN OF UNITED LIEN SOLUTIONS, L.L.C. |

I. INTRODUCTION

On May 28, 2009, S. William Manera, the Chapter 7 Trustee, filed a Motion to Approve a Settlement Agreement between the Trustee and Victoria Specialty Insurance Company ("Insurance Company"), for and behalf of its insured, Randy Allen ("Allen"), approve the administrative expense claim of special counsel for the Trustee, Wattel & York, LLC ("Special Counsel") in the amount of $5,915.73, and set aside the health care provider lien filed by United Lien Solutions, L.L.C. ("United Lien"). On June 16, 2009, United Lien filed an objection to the settlement, requesting that its lien be paid as a part of any settlement entered into between the Trustee and the Insurance Company. The Court set the matter for hearing on August 6, 2009. Counsel for the Trustee and Dr. Tauber, the agent for United Lien, were present at the hearing. No evidence was presented by either side. The parties presented oral argument

1

only, and requested that the Court rule on the matter.[1]

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2009).

II. FACTUAL BACKGROUND

The parties are in agreement as to the facts. On August 16, 2007, the Debtor Vicki Overman sustained injuries as a result of an automobile accident with Allen. As a result of the accident, the Debtor held potential claims against Allen. The Insurance Company has acted on behalf of its insured, Allen. On November 21, 2008, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[2] The potential claims against Allen became property of the bankruptcy estate upon the filing of the Debtors' petition. The Trustee retained Special Counsel to assist him in resolving any claims that the bankruptcy estate had against the Insurance Company or other third parties as a result of the accident.

---

**1.** Normally the Court would require the parties to proceed with an adversary proceeding concerning the nature, extent, and validity of a lien. However, United Lien acted only through its agent, was not represented by counsel, and sought an expedited determination as to whether it had a lien on any proceeds to be received from the settlement. The facts are not in dispute in this case, and this matter may be decided as a request for a determination on the merits as to the validity of the lien of United Lien as a part of the contested matter between the parties as to the approval of the settlement. Bankruptcy Rule 9014 does permit the Court to incorporate Rule 7056, concerning matters which may be disposed of by summary judgment. The Court has chosen this mechanism of summary judgment, rather than force the parties to present the issues, in the exact same manner, through an adversary proceeding. In re Friedman, 184 B.R. 883 (Bankr. N.D.N.Y 1994) (holding that a lien determination, which would have been more properly brought as a adversary proceeding, should be allowed to proceed on the merits as originally filed, so long as the parties have been adequately protected and the parties have had an opportunity to be heard.)

**2.** Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 applies to these proceedings. ("BAPCPA")(Pub.L.No. 109-8, §1501(b)(1), 119 Stat. 23, 216).

2

The Trustee has entered into a settlement agreement with the Insurance Company, which has agreed to pay the bankruptcy estate the sum of $16,000 in satisfaction of all claims that arose from the accident. United Lien does not object to the settlement or the fairness or reasonableness of the settlement amount. The Trustee also seeks to pay Special Counsel the amount of $5,915.73 from the settlement proceeds. United Lien does not object to the reasonableness of the compensation requested or that Special Counsel should be paid.

The Trustee also seeks to avoid the lien of United Lien. The Trustee asserts that United Lien did not properly perfect its lien under Arizona law. As a result, Untied Lien may not be paid from the settlement proceeds. United Lien asserts that it has complied fully with Arizona law, and therefore, it should be paid in full from the settlement proceeds. Hence, the objection of United Lien is not that this settlement should not be approved; it is only that the distribution of proceeds should be utilized, first, to pay its lien before the claim of Special Counsel or any other creditor of this estate.

Concerning the lien, the parties agree that the documentation attached to the Trustee's Motion is what United Lien has recorded. The Trustee states that Dr. Lynne Pirie filed a health care provider lien on September 28, 2007, in the amount of $580. This lien was released pre-petition on October 10, 2008.[3] The Trustee states that North Phoenix Health Institute also filed a health care provider lien on January 25, 2008, in the amount of $2,086.00 and that this lien was also released pre-petition on October 10, 2008.[4] Finally, the Trustee states that United Lien filed a "Notice of claim of United Lien Solutions" on March 6, 2008, and that said document still exists of record.[5] United Lien does not dispute any of the foregoing. Rather, United Lien argues that the liens of Dr. Pirie and North Phoenix Health Institute were released after the lien rights had been assigned to it, so United Lien is entitled to whatever lien rights

---

**3.** Docket Entry No. 25, Trustee's Motion at p.2, ¶6b.

**4.** Id. at p.2, ¶6a.

**5.** Id. at p.2, ¶6c.

3

could have been asserted by the lienholders before the liens were released.[6] However, upon further questioning by the Court, at oral argument, United Lien stated that it was only relying on the lien it filed of record, not on any prior liens.

United Lien asserts that it acquired its rights in the liens of Dr. Pirie and North Phoenix Health Institute on February 22, 2008, through a purchase and assignment of those rights. On February 27, 2008, United Lien forwarded a Notice of Sale and Assignment from Dr. Pirie and North Phoenix Health Institute to United Lien, and an itemized billing statement in the amount of $1,881.00, to Special Counsel. The Trustee does not dispute these facts, but believes that they are not relevant to a perfection of the lien of United Lien.

### III. LEGAL DISCUSSION

#### A. Approval of the Settlement

In this case, the Trustee has set forth a sufficient record, that in his business judgment, the settlement with the Insurance Company should be approved. The bankruptcy court has wide discretion in granting approval of compromises between trustees and creditors. In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986). The approval of a settlement agreement negotiated by a trustee is governed by the standards set forth by the Ninth Circuit in In re Woodson, 839 F.2d 610 (9th Cir. 1988). In the decision of Woodson, the Court identified the following factors as being necessary to determine whether a settlement is in the estate's best interest: (1) the probability of success in the litigation; (2) the difficulties of collection; (3) the complexities of litigation and the expense, inconvenience and delay caused by such litigation; and (4) the interest of the creditors with due deference to their reasonable views. Woodson at 620. United Lien has not interposed an objection to the approval and payment of this amount as settlement for any claims that the bankruptcy estate may have against the Insurance Company, and its insured, Allen. Therefore, based upon this record, the settlement agreement between the

---

**6.** United Lien did not provide any documentation concerning the released liens.

4

Trustee and the Insurance Company, on behalf of its insured, Allen, is approved. The Court has already executed an order approving the settlement.

### B. Approval and Payment of the Fees and Expenses of Special Counsel

The Trustee requests that the fees and costs of Special Counsel be approved at this time and paid from the proceeds to be received from the settlement. In this case, the Court approved the retention of Special Counsel by the Trustee, with the fee to be paid set at 33 percent of any net recovery received by the bankruptcy estate.[7] United Lien does not question the amount or the payment of the administrative expense of Special Counsel. Since the Court has nothing in the record to dispute the reasonableness of the fees and costs requested, and the Court having independently determined that the fees and costs requested are reasonable, the Court approves the payment of 33 percent of the net proceeds of $16,000 to Special Counsel, or the sum of $5,333.33. Special Counsel also requests that its costs in the amount of $582.40 be paid, which the Court now approves. Given the foregoing, the Court approves the administrative expense of Special Counsel in the aggregate amount of $5,915.73. The Court has already executed a form of order which approves the fees and costs of Special Counsel and allows for payment of said claim from the proceeds received from the Settlement.

### C. Setting Aside the Lien of United Lien

The final request of the Trustee is that the lien of United Lien be set aside, so that the Trustee may pay the administrative expense of Special Counsel, and utilize the balance of the settlement proceeds to pay the creditors of the bankruptcy estate. United Lien counters that it has a valid medical provider lien, and it should be paid from the settlement proceeds prior to payment of the general unsecured creditors of this estate. In this case, United Lien concedes that it did not provide the medical services to the Debtor, rather, those services were provided by Dr. Pirie and North Phoenix Health Institute. However, Dr. Pirie and North Phoenix Health Institute filed medical provider liens, and the underlying obligations and liens were assigned to United

---

**7.** Docket Entry No 15. Special Counsel was retained pursuant to 11 U.S.C. §327.

5

Lien. Although those liens were subsequently released, United Lien believes that the releases have no effect on its assigned lien.

The validity of any medical provider lien of United Lien is predicated upon applicable state law. Butner v. U.S., 440 U.S. 48, 99 S.Ct. 914 (1979). In this matter, the Debtor received services from medical providers located in Arizona, those medical providers filed liens pursuant to Arizona law, the parties entered into an assignment of the medical provider liens in Arizona, and United Lien recorded its lien in Arizona. Hence, the applicable law to resolve this controversy is the law of Arizona.

Concerning a health care provider, certain statutory provisions must be complied with for the provider to have a valid lien under Arizona law. ARS § 33-932 (A) states as follows:

> In order to perfect a lien granted by § 33-931, the executive officer, licensed health care provider or agent of a health care provider shall record, before or within thirty days after the patient has received any services relating to the injuries, except a hospital which shall record within thirty days after the patient is discharged, in the office of the recorder in the county in which the health care provider is located a verified statement in writing setting forth all of the following:
>
> 1. The name and address of the patient as they appear on the records of the health care provider.
> 2. The name and location of the health care provider.
> 3. The name and address of the executive officer or agent of the health care provider, if any.
> 4. The dates or range of dates of services received by the patient from the health care provider.
> 5. The amount claimed due for health care.
> 6. For health care providers other than hospitals or ambulance services, to the best of the claimant's knowledge, the names and addresses of all persons, firms or corporations and their insurance carriers claimed by the injured person or the injured person's representative to be liable for damages arising from the injuries for which the person received health care.

A review of the United Lien, which is attached to the Trustee's Motion as exhibit A, reflects that:

1. The name and location of the health care provider is not set forth. United Lien argues that listing Dr. Pirie on the certificate of service as to the mailing of the lien is sufficient.

6

This Court disagrees. The normal reading of the statutory requirement reflects the Legislators' intent that for notice purposes, the name and location of the health care provider be set forth in the body or main part of the document. This provides the Debtor with information that she needs as to who may be asserting a lien, and provides other creditors with appropriate notice under the statute. In this case, it is unclear who holds the lien, and the amount of that lien.

2. United Lien states that it did not have the name and address of the executive officer or agent of the health care provider, so it did not need to disclose the information. United Lien filed its lien after Dr. Pirie and North Phoenix Health Institute had recorded their liens. United Lien concedes that it received an assignment of the obligations and potential lien rights of Dr. Pirie and North Phoenix Health Institute. Since it received an assignment of those claims, United Lien was fully aware of who provided the services. In fact, United Lien states in its Objection that it attached a copy of the Notice of Sale and Assignment that it received from the lien claimants to the lien that it recorded with the Maricopa County Recorder's Office on March 6, 2008. Thus, the name and address of the executive officer or agent should have been included by United Lien when it filed its lien after the assignment.

3. United Lien argues that the dates or range of dates for services received by the Debtor need not be set forth, since there is the possibility that the Debtor is still receiving treatment. However, one could say that as to any treatment regime. If United Lien is correct in its statutory interpretation, a lien claimant would never need to complete the information required as to the dates or range of dates concerning the services rendered. The exception not to set forth the dates or range of dates for services rendered would essentially negate the requirement set forth in the statute. Such a reading of a statutory provision would effectively render it a nullity. The Court is unable to read such an interpretation as proposed by United Lien into the statute. United States v. Ron Pair Enter., Inc., 489 U.S. 235, 243, 109 S.Ct. 1026, 103 L.Ed. 2d 290 (1989); Lamie v. United States Trustee, 540 U.S. 526 (2004). Thus, although there may be instances when it is impossible to state the date or range of dates for services to be

7

rendered to a patient, there should be some factual support for such a statement on a lien filing. In this case, United Lien has provided no facts to support its failure to set forth a date or range of dates for services. In essence, there is nothing in this record to reflect on-going treatment. The fact that Dr. Pirie and North Phoenix Health Institute were able to assign their liens to United Lien vitiates any argument of ongoing services. Moreover, Section 33-932B[8] states that if services are to be rendered on an on-going basis, when the lien is filed, the amount claimed due as of the filing should be set forth, with a statement that the patient's treatment will continue. United Lien did not do that in its lien filing.

        4. As to the amount claimed for health care, United Lien states that nothing need be stated other than "to be announced when discharged." However, if that were an acceptable option, no health care provider need ever disclose the amount due and owing to it. The purpose of the statute is to create a lien, which will have priority over the claims of other creditors. There is no statement in the statue that this lien should be unlimited in amount. It is possible that there may be facts to support that the full amount of the lien has not yet been determined, but those facts are not present in this case. United Lien sent over an itemized statement to Special Counsel as to the services which had been rendered, and the sale and assignment of the liens reflected that the original health care providers were no longer involved in providing services to the Debtor. Therefore, United Lien could have set forth the amount in its lien claim.

        5. As to any satisfaction of previous liens, United Lien seems to state that they purchased the liens of Dr. Pirie and North Phoenix Health Institute, which were assigned to it. Presumably it believes that the lien that it filed which reflected such a purchase and assignment

---

**8.** ARS § 33-932 (B) states in its entirety as follows:

The verified statement shall also include the amount claimed due as of the date of recording of the claim or lien and a statement regarding whether the patient's treatment has been terminated or will be continued. Amounts incurred during the continued period are also subject to the lien.

8

was sufficient. However, it was the filing of the lien releases by Dr. Pirie and North Phoenix Health Institute that reflected the satisfaction of their liens. If United Lien intended to release the liens once those liens were transferred to it, United Lien should have disclosed that information on its documentation. It did not.

The Trustee has set forth numerous grounds to set aside the lien of United Lien. Even if the Court is incorrect on one or more of these provisions, and United Lien did somehow comply, the statute is written in the conjunctive. Any failure to comply with any of the statutory provisions vitiates the lien. In this case, the Trustee has made a sufficient showing that United Lien did not comply with numerous statutory provisions to have a valid medical providers lien under Arizona law.

Although not specifically raised by the parties, the Court wishes to address a few other points. It appears that United Lien believes that if valid liens are filed, and it receives an assignment of those liens, no subsequent action by the former lienholders will have any effect on it. ARS § 33-934 provides as follows:

> A. A release of claims on which a lien or assignment is given by § 33-931 or of any judgment on that claim is not valid or effectual against the lien or assignment unless the lienholder or assignee joins in the release or executes a release of the lien or assignment. If any amount has been or is to be collected by the injured person or that person's legal representative from or on account of the person, firm or corporation liable for damages by reason of a judgment, settlement or compromise, the claimant or assignee of the lien or assignment may enforce the lien or assignment by action against the person, firm or corporation that is liable for damages, or against any insurer or other person, firm or corporation that is responsible for paying all or part of the damages.
>
> B. An action pursuant to this section shall be commenced and tried in the county in which the lien or assignment is filed, unless ordered by the court to be removed to another county for cause. The court may allow reasonable attorney fees and disbursements to the prevailing party. The action shall be commenced within two years after the entry of the judgment or the making of the settlement or compromise. In an action to enforce a lien or assignment, the lienholder or assignee may not recover more than the amount of the lien or assignment nor may it recover more against a defendant in the lien action than that defendant is obligated to pay under judgment or settlement. The defendant in the lien or assignment action cannot raise as a defense in that action that it is not liable for the amount it is obligated to pay under the judgment or settlement except that it may dispute the amount of the lien on the grounds that the charges giving rise to the lien are erroneous or exceed the customary charges, or that the care, treatment

9

> or transportation giving rise to the charges was not medically necessary or causally related to the event giving rise to the claim to which the lien or assignment extends.
>
> C. This section does not create any rights or causes of action on behalf of the lienholder other than are provided for in this section

Thus, a lienholder has the power to release a lien. Once it does so, it may not pursue a claim for damages for unpaid services. Initially United Lien chose to purchase the lien claims of Dr. Pirie and North Phoenix Health Institute. The purchase was apparently in satisfaction of any claims that the prior lienholders had, because there is no reservation of rights by them as to any additional claims for services rendered. Morever, they filed releases of their liens reflecting that they had no residual claims outstanding. Once they released their liens, which is permitted under Section 33-934, the only lien of record was the lien of United Lien. That lien had to be sufficient, on its face, and meet the requirements of Section 33-932, since there were no other extant liens of record upon which United Lien could rely. As noted above, United Lien's documentation was not sufficient to meet the statutory prerequisites, and it set forth no factual basis to meet any other analysis or interpretation of the statute. Hence, the lien of United Lien was deficient and capable of being set aside by the Trustee.

The other outstanding issue appears to be United Lien's belief that by sending information to Special Counsel as to the services rendered, the dates upon which the services were rendered, and the amount to be charged for the services rendered, it somehow has complied with the statute. However, there is nothing in the provisions which create a lien for a health care provider that allows a potential lien claimant to send the information to a patient's counsel as a means to meet the statutory requirements. To the contrary, Section 33-932 concerning the perfection of a lien by such a provider states, in pertinent part: "If a health care provider other than a hospital or ambulance service does not record the claim, lien or assignment as provided in this section, the claim, lien or assignment is invalid and may not be enforced by the cause of action provided in section 33-934."

Case 2:08-bk-16830-SSC    Doc 36    Filed 09/25/09    Entered 09/25/09 21:00:16    Desc
Main Document    Page 10 of 11

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that United Lien Solutions, L.L.C. failed to meet the statutory requirements under Arizona state law to perfect a health care provider lien and, therefore, is not entitled to a distribution from the net proceeds of the settlement. The Trustee shall lodge an appropriate form order in this matter.

DATED this 25th day of September, 2009.

_____
Honorable Sarah Sharer Curley
United States Bankruptcy Judge

11